MARTIN v. FOWLER.

1. ESTOPPEL—PLEADING—EXECUTORS AND ADMINISTRATORS.—Where
   a defendant admits in his answer the representative character of the
   plaintiff, he is estopped from afterwards denying it.
2. AMENDMENTS—PLEADINGS.—Sec. 194 of the Code, providing for
   amendment of pleadings, cannot be invoked by a party who has lost
   his cause.
3. IBID.—IBID.—ATTORNEY—EXCUSABLE NEGLECT.—When an attor-
   ney could have ascertained certain facts by due diligence, he cannot
   afterwards be relieved of the consequences of his carelessness, under
   sec. 195 of Code.
4. JURISDICTION—WAIVER.—Want of jurisdiction of the person may be
   waived, but not want of jurisdiction of the subject-matter.

5. EXECUTORS AND ADMINISTRATORS.—A grant of letters of adminis-
tration relates back to the death of the intestate, and legalizes all
previous acts of the party as administrator.

Motion in this Court by the appellant, in the case of E.
and R. M. Martin, as administrators of Othello Martin, re-
spondents, against James Fowler, appellant.

*Messrs. Carlisle & Hydrick,* for the motion.

*Messrs. Thomason & Bomar,* contra.

Nov. 22, 1897. The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER.    This was a motion: "*First,*
for an order suspending the hearing of the appeal herein, and
giving the defendant, appellant, leave to move the Court of
Common Pleas for Spartanburg County for an order vacating
and setting aside the judgment herein appealed from, and
for a new trial, with leave to defendant to amend his answer
by withdrawing his admission of the fourth paragraph of the
complaint, and denying the same, on the ground that the
plaintiffs, E. and R. M. Martin, were not the duly appointed
administrators of the estate of Othello Martin, deceased, and
that no administration of his estate has ever been granted to
any one.    *Second,* for such other relief as may be just and
proper."    This motion is based upon the following affida-
vits: 1st. That of Charles J. Fowler, to the effect that said
Othello Martin died about the year 1892, and that at the
time of his death, and for many years prior thereto, he was
a citizen and resident of the county of Spartanburg.    2d.
That of J. J. Gentry, to the effect that he is now judge of
probate of the county of Spartanburg; and that after dili-
gent search of the records of his office, he is unable to find
any evidence tending to show that E. and R. M. Martin, or
either of them, or any other person, have ever been appointed
administrators of the estate of Othello Martin, deceased, or
that they, or either of them, ever qualified or gave bond as
such.    3d. That of D. E. Hydrick, to the effect that he is

one of the counsel retained to defend the action in this case, and as such has conducted the defense from the time his firm was first employed; that when he filed the answer of the defendant, in which it is admitted that the plaintiffs were the duly appointed administrators of the estate of Othello Martin, deceased, he verily believed it to be true, the ground of his belief being the allegation of the fact in the complaint; that he did not discover that such allegation was not true until about a week or ten days before making this affidavit, to wit: 3d June, 1897, when he made the discovery by examining the office of judge of probate for the purpose of obtaining facts which he deemed proper to incorporate in the "Case," which he was then preparing for the purpose of this appeal. 4th. That of Jno. W. Carlisle, Esq., to the effect that he thought plaintiffs were the duly appointed administrators of the estate of Othello Martin, deceased, until recently informed to the contrary by his partner, Mr. Hydrick.

An affidavit of W. S. Thomason, Esq., one of the counsel for respondent, was also submitted in his behalf, to the effect that he was judge of probate of the county of Spartanburg from January, 1887, to December, 1895; that on or about the ⸻ day of February, 1892, "as deponent distinctly remembers," plaintiffs filed their petition in his court for letters of administration upon the estate of their father, Othello Martin; that a citation was duly published in the county newspaper, and that on or about the day named therein the plaintiffs appeared in person before the court; that no objection whatever was made to their being appointed, "and deponent distinctly remembers swearing both of the plaintiffs in as administrators of their father's estate," in which capacity they have been acting ever since. Deponent also thinks that he issued to plaintiffs a certificate of their appointment and qualification, but as to this he is not absolutely certain; that deponent not being quite satisfied with the bond which plaintiffs then furnished, he returned it to them to get other security thereon; that the

reason why no record of the appointment appears among
the records of the Court is because this matter was delayed
until the plaintiffs should return their bond to the Court,
which was not done until the 3d day of June, 1897, which
said bond is annexed to the affidavit, and appears to be a
bond in the sum of $1,000, in the usual form, signed by E.
Martin, R. M. Martin, S. T. Martin, and A. M. Wood, in
the presence of two subscribing witnesses, and bears date
3d March, 1892.

The whole record in this case is not before us, but we
assume, from what appears in the motion papers, that the
action was brought to foreclose a mortgage given to secure
the payment of a note made payable to the alleged intestate
in his lifetime; and that it was distinctly alleged in the
complaint, and formally admitted in the answer, that letters
of administration of the personal estate of such intestate had
been duly granted to the plaintiffs.   What issues were raised
in the pleadings we are not informed, though it does appear
that the plaintiffs recovered judgment, from which defend-
ant has appealed, but upon what grounds, does not appear.
Inasmuch as the defendant admitted on the record the right
of plaintiffs to sue in their representative capacity, we must
assume that the right of plaintiffs to sue in their represen-
tative capacity was not and could not have been put in issue
in the Court below; and certainly no such issue could be
raised by the appeal.   So that the practical inquiry is whe-
ther the defendant, by this motion, can be permitted to
raise the issue of plaintiffs' right to sue in their representa-
tive capacity, which he neglected to raise at the proper time
and in the proper way.

As far back as the case of *Reynolds* v. *Torrance,* 2 Brev.,
59, it was held that if the defendant desires to raise the issue
of plaintiff's right to sue in a representative capacity, he
must do so by his pleading, and if he omits to do so, he is
estopped from afterwards raising such issue.   Brevard, J.,
in delivering the opinion of the Court, uses this significant
language, which is so pertinent to our present in-

quiry that we quote it: "But if the defendant omits
to plead that the plaintiff never was executor, and
pleads over to the action, he admits the right of the plaintiff
to sue in the character he assumes, and is afterwards estop-
ped to deny that he is executor." Now, if this be true,
when the defendant *impliedly* admits the plaintiff's represen-
tative character by omitting to deny the same and pleading
over to the action—in that case by pleading the general
issue—how much more true is it in this case, where the de-
fendant has *expressly* admitted on the record plaintiffs' right
to sue in their representative character. It is also impor-
tant to notice that in Reynolds *v.* Torrance, the plaintiff,
upon the demand of counsel for defendant, "produced a cer-
tificate of the clerk of a county court in Virginia, stating
that the plaintiff had qualified as executor of Reynolds and
had proved the will," when objection was made that this
did not authorize the plaintiff to sue in the Courts of this
State. The Court, in speaking of this matter, said that
while the objection was tenable, yet as the defendant had
no right to demand the letters testamentary under the issue
joined by the parties, "and though the plaintiff did produce
them, yet this being foreign to the issue, made no difference
in the case," as the character of the letters testamentary
unnecessarily produced, was immaterial. Now, if the de-
fendant in that case was not allowed to avail himself of the
objection that the plaintiff had no right to maintain the
action in his representative character, where the fact ap-
peared that the letters testamentary produced by plaintiff
were not sufficient to authorize him to maintain an action
in the Courts of this State, because the defendant had by
his pleading impliedly admitted the plaintiff's right to sue,
and had thereby estopped himself from denying the same,
how much stronger is the present case, where the defendant
has expressly admitted plaintiff's right to sue in a represen-
tative capacity, and the fact has not been made to appear
that the plaintiffs are not administrators, and on the con-
trary it is alleged by affidavit that they are. The case of Rey-

nolds *v.* Torrance has been recognized in *Kelly* v. *Thomson*, 2 Brev., 58, in *Smith* v. *Mitchell*, 2 N. & McC., 64, and in *Brockinton* v. *Vereen*, 1 Bail., 447. See, also, to same effect, *Warner* v. *Condy*, 4 McC., 344, and *Hutchinson* v. *Bobo*, 1 Bail., 546. The case of *Smith* v. *Mitchell*, *supra*, also shows that, after defendant has pleaded the general issue, and thereby admitted the plaintiff's right to sue in a representative capacity, the defendant cannot, *even in the Court below*, be permitted to raise an issue as to the representative character of the plaintiff, by putting in another plea denying that he was administrator. To the same effect is *Warren* v. *Condy*, *supra*.

These authorities are conclusive of the matter, unless the law thus long and well settled has been altered by the Code. The only two sections of the Code which can be supposed to affect this question are sections 194 and 195. In the former it is declared: "The Court may, before or after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading, process or proceeding by adding, amending or striking out the name of any party; or by correcting a mistake in the name of a party, or a mistake in any other respect; or by inserting other allegations material to the case; or when the amendment does not change substantially the claim or defense, by conforming the pleadings or proceedings to the facts proved." But this Court has held that the object of this section was only to perfect a proceeding in which a party has been successful, and not when he has lost his cause; and not to be used as a means of obtaining a new trial on a new cause of action after the case has been lost on the original cause of action. *Kennerty* v. *Etiwan Co.*, 21 S. C., 226; *Whaley* v. *Stevens*, 21 S. C., 221; *Hall* v. *Woodward*, 30 S. C., 564; *Clayton* v. *Mitchell*, 31 S. C., 199. It is obvious, therefore, that this section makes no change in the law as previously settled by the cases hereinbefore cited.

Sec. 195 reads as follows: "The Court may likewise in its discretion, and upon such terms as may be just, allow an

answer or reply to be made, or other act to be done, after the time limited by this Code of Procedure, or by an order enlarge upon such time; and may also, in its discre- tion, and upon such terms as may be just, at any time within one year after notice thereof, relieve a party from a judgment, order or other proceeding taken against him, through his mistake, inadvertence, surprise or excusa- ble neglect, and may supply an omission in any proceeding, &c." The only portion of this section which can, by any possibility, be supposed to affect the question which we are considering, is the provision by which the Court is author- ized to relieve a party from a judgment "taken against him through his mistake, inadvertence, surprise or excusable neglect." It seems to us that the showing made in the motion papers is altogether insufficient to entitle the de- fendant to relief under this provision. The allegation is that counsel for defendant was induced to admit that the plaintiffs were the duly appointed administrators of the personal estate of Othello Martin, deceased, solely because it was so alleged in the complaint, when the means of cor- rect information upon the subject was of easy access, to which counsel did, in fact, subsequently resort, when he obtained the information upon which he now relies to sus- tain this motion. Surely this cannot properly be charac- terized either as mistake, inadvertence, surprise or excusable neglect. The public records are accessible to all persons who may desire information as to what they contain, and if a party wilfully or carelessly omits to avail himself of the sources of information provided by the law, he must take the consequences of such omission. We do not see, there- fore, how the moving party can claim any benefit from either of these sections. Indeed, the counsel for the motion, in his elaborate argument, does not seem to lay any stress upon either of these sections. On the contrary, he rests his argument, mainly, upon the ground that the motion presents a question of jurisdiction, which may be raised at any time, and cannot be waived by any acts or ad-

missions of the parties.  It must be remembered, however, that jurisdiction is of two separate and distinct kinds: 1st, jurisdiction of the subject, or, as it is usually phrased, of the subject matter; 2d, jurisdiction of the person; and very different rules apply where the question is as to the jurisdiction of the subject, from those which are applicable where the question is as to the jurisdiction of the person.  In the former, jurisdiction cannot be waived by any act or admission of the parties, for the very obvious reason that the parties have no power to invest any tribunal with jurisdiction of a subject over which the law has not conferred jurisdiction upon such tribunal.  As is well said in Elliott on Appellate Proceedure, sec. 498: "The theory of the law is that where there is an absolute want of jurisdiction there is no Court, and it is too clear for controversy that a party can neither create a Court nor endow it with authority over a subject not placed within its jurisdiction by law." Hence the well settled doctrine that consent cannot confer jurisdiction of the subject.  But in the latter the rule is very different.  The party may by consent confer jurisdiction of the person, or may waive the right to raise the question whether the Court, in a given case, has obtained jurisdiction of his person in the mode prescribed by law, as is illustrated by the familiar instance of a party, who, though not served with the summons, appears and answers, and is thereby precluded from afterwards raising the question as to whether the Court had acquired jurisdiction of his person.  Here there is obviously no question as to the jurisdiction of the subject, as there can be no doubt that the Court of Common Pleas had jurisdiction of the action to foreclose a mortgage. The only question of jurisdiction is as to the parties, and if, as we have seen, the defendant has by his acts and admissions estopped himself from raising that question, there is an end of the matter.  We have carefully examined all the cases cited by the counsel for the motion, besides some others not cited, and none of them sustain the position contended for by counsel.

The case of *Moore* v. *Smith*, 11 Rich., 569, which has been much relied upon in the argument, presented no question of jurisdiction *of the person*, but turn solely upon a question as to the jurisdiction *of the subject-matter.* In that case the ordinary had undertaken to grant letters of administration upon the personal estate of a person who was supposed to have died intestate, upon the presumption of his death arising from an absence of such person from the State, unheard of for more than seven years; and when the person appeared in Court as a living person, demanding his rights, the Court held, that as the ordinary had never been invested with jurisdiction to grant letters of administration upon the personal estate of a living person, his act, in attempting to do so, was altogether null and void, and hence the sale of the plaintiff's property by the so-called administrator, who had been appointed without any authority, did not divest the plaintiff of his right of property.

So, in *Blakely* v. *Frazier*, 20 S. C., 144, it was held, that the court of probate never having been invested with jurisdiction to issue letters testamentary to a person who had not been appointed executor by the will, or whose appointment as such depended upon a contingency, which the record showed had never happened, was void for want of jurisdiction of the subject.

In *Poag, admr.,* v. *Carroll,* Dud. 1, and *Poag* v. *Miller,* Dud. 11, no question of jurisdiction of any kind was presented or decided. In the former, the question was as to whether a person named as executor in a supposed will, to whom letters testamentary had been granted, could be held personally liable for acts done by him in good faith before the probate of such supposed will had been set aside, by an administrator duly appointed after the probate of such supposed will had been set aside. In the latter case, the question was as to whether a sale made by the supposed executor before the probate of the will under which he acted was set aside, could have the effect of divesting the legal title of the administrator.

So, in *Vance* v. *Davenport*, 11 Rich., 517, no question of jurisdiction was raised or decided. In that case the plaintiff was named as executor in a will, and qualified as such, and as such sold personal property of the testator, taking sealed notes for the purchase money. Subsequently a later will was discovered in which one Pitts was named as executor, and this last will being admitted to probate, said Pitts received letters testamentary, and recovered the property from the purchasers at the sale made by the plaintiff. The action was brought on the notes by Vance, and it was held that he could not recover, as the consideration of the notes had failed.

The case of *Bragg* v. *Thompson*, 19 S. C., 572, has been cited, but it is difficult to see what application it has to the question which we are called upon to determine. In that case it appeared that one R. M. Smith had recovered a judgment against Wm. Landford and others, and that under the execution issued to enforce such judgment, the sheriff levied on a tract of land as the property of said Wm. Lanford, exposed the same for sale, when it was bid off by the plaintiff, Bragg, who paid his bid and received titles from the sheriff. The proceeds of the sale were applied to the satisfaction of the judgment of Smith, leaving a balance in the hands of the sheriff—the sheriff having, at the time, no notice of any defect in the judgment. Subsequently the land was recovered from Bragg under some claim, the nature of which did not appear. Thereupon the plaintiff commenced this action against the defendant, Thompson, the sheriff, who made the sale, to recover the purchase money of the land which he had paid to the sheriff. On the trial, the plaintiff was allowed to prove that, at the time the action, in which judgment of Smith was recovered, was commenced, the said Wm. Lanford was dead, and, of course, was not served with the summons. The Court held that though said judgment against Wm. Landford was absolutely void, yet that the execution to enforce the same, being regular in form, was sufficient to protect the sheriff in what. he had

done without notice of any defect in the judgment, and hence he was only liable to the plaintiff for the balance in his hands after paying the debt and costs, as directed by the execution.

Then there is a class of cases in which the question was as to the right of one to whom letters testamentary, or letters of administration, has been granted by the Courts of another State, to bring an action in his representative capacity in the Courts of this State—such as *Kirkpatrick* v. *Taylor*, 10 Rich., 393; *Tillman* v. *Walkup*, 7 S. C., 60, and *Dial* v. *Gary*, 14 S. C., 573—in which it is practically held that the Courts of this State do not recognize the jurisdiction of any foreign tribunal to grant either letters testamentary or letters of administration which will confer any right to bring an action here. And on somewhat the same line, the case of *Carmichael* v. *Ray*, 1 Rich., 116, which holds that a grant of administration to a citizen of this State upon the personal property of an intestate resident here, does not confer the right to recover personal property in the State of North Carolina, belonging to the intestate at the time of his death, from a citizen of North Carolina, who is served with process while temporarily here on a visit, for the reason that the grant of administration here confers no title to property of the intestate which is found beyond the jurisdiction of the State. We do not see that any of these cases are applicable to our present inquiry.

The last case which we shall notice in this connection, *Richardson* v. *Gower*, 10 Rich., 109, is in principle more like the case under consideration than any which has come to our notice. In that case, the payee and owner of the note upon which the action was based, was John Richardson, and the note was payable to him, or bearer. Upon his death intestate, his distributees, with a view to avoid expense of administration, appointed agents to settle the estate, and delivered the note to them. These agents brought this action on the note in their own names as bearers. At the trial, a motion of nonsuit was made upon the ground

that the plaintiffs were not the legal owners, and, therefore, could not maintain the action. The motion was granted, and upon appeal, affirmed, upon the ground that the plaintiffs were not the legal owners of the note; the distributees themselves not being the legal owners, could not, of course, transfer any title to the plaintiffs. To use the language of the Court: "No one can with propriety be said to be the owner of the goods of an intestate, unless it be one who can trace his authority to a regular administration granted by the ordinary." The case just cited would have been conclusive of the present case, if the defendant here had on the trial, contested the representative character of the plaintiffs, and consequently their legal ownership of the note and mortgage, as the defendant in the case cited did; but, unfortunately for the defendant here, he expressly admitted by his pleadings the representative character of the plaintiffs, and, as we have seen, he is now estopped from disputing that fact.

But there is another view of this matter which may, and probably will, prove fatal to defendant's motion. It is well settled that a subsequent grant of administration has relation back to the death of the intestate, and legalizes all his intermediate acts—that is, makes them his acts as administrator. *Cook* v. *Cook*, 24 S. C., at page 206, and the cases there cited. And in 1 Williams on Exors., book 5, chap. 1, sec. 2, it is said that while an administrator must have obtained his letters of administration before he commences an action at law, yet he may file a bill in chancery before he has taken out letters of administration, and it will be sufficient to have them at the hearing. To the same effect, see Enc. of Plead. & Pract., 696, and the cases there cited. Now in this case, which is an action on the equity side of the Court, the affidavit of Mr. Thomason submitted in behalf of the respondents tends to show that the plaintiffs had taken the proper steps to obtain letters of administration very soon after the death of the intestate, which were not entered on the records at the time, because the bond offered,

not being entirely satisfactory to the judge of probate, was returned to the applicants for the security to be strengthened, and that a new bond has been furnished.   If this be so, then, under the authorities above cited, the motion, if granted, would not avail the defendant; and the defendant need be under no apprehension that he may hereafter be called upon to respond to another person who may hereafter receive letters of administration upon the personal estate of the said Othello Martin.   But, even if this be not so, we do not see how the defendant occupies any better position than one who, when sued for the possession of personal property, admits the legal ownership of the plaintiff, and after judgment against him, discovers that the plaintiff was not the legal owner of the property sued for—a fact which, by due diligence, he could have discovered before judgment went against him.   In such a case it is very obvious that the defendant would not be entitled to any relief, because his loss would be the result of his own fault, and not the fault of the law.

We do not see how, in any view of the case, the defendant would be entitled to the relief which he seeks.   In accordance with these views the order refusing the motion has heretofore been filed.