Lillie H. SCRUGGS, Personal Representative of the Estate of Robert H. Scruggs, Jr., deceased, Plaintiff,

v.

The CHESAPEAKE AND OHIO RAILWAY COMPANY, a corporation, Defendant.

Civ. A. No. 69–C–131–R.

United States District Court,
W. D. Virginia,
Roanoke Division.

Dec. 24, 1970.

1. AR 630–10 § 51; 1A Reg 11–6, apps. A, B, Map # A–17; 1A Reg 190–2 § 25; 1A Reg 190–5 § 6.

William W. McVay, McArdle, Mc-Laughlin, Paletta & McVay, Pittsburgh, Pa., and Edward S. Kidd, Jr., Roanoke, Va., for plaintiff.

Philip Lee Lotz, Lotz & Black, Staunton, Va., for defendant.

## OPINION AND JUDGMENT

DALTON, Chief Judge.

On November 3, 1969 Robert H. Scruggs, Jr., age 46, unfortunately met his death while engaged in his duties as an employee of the defendant. His widow brought a suit as personal representative on December 9, 1969 although she did not actually qualify as such until February 5, 1970. A trial on the issues was had on June 22, 1970 and the jury returned a verdict for $345,000 which was apportioned $240,000 to the widow and $100,000 to the eighteen year old only child.

The defendant immediately moved the court to set aside the verdict as contrary to the law and evidence and as excessive.

■■ The court took the motion under advisement and on June 29, 1970 the defendant filed its written motion to set aside the verdict. Primarily the objections relate to the measure of damages. The other issues will first be considered, however. Defendant contends that the verdict should be set aside because the plaintiff did not qualify as personal representative until after the filing of the complaint. This issue was not raised before trial because the defendant answered plaintiff's allegation that she was the personal representative of the decedent with the statement that it was without sufficient information to answer the allegation. The capacity of an individual to sue is determined by state law, Federal Rules of Civil Procedure 17(b), and it seems well-settled that the question of the authority of a personal representative must be raised, if at all, in the initial answer. Whether or not the plaintiff had qualified as personal representative was a matter of public record open to defendant's investigation

if it wished and its answer was insufficient to save this issue. 34 C.J.S. Executors and Administrators § 762 p. 803 (1942); *see* Martin v. Fowler, 51 S.C. 164, 28 S.E. 312, 315 (1897). *But see* Glenn v. E. I. DuPont De Nemours & Co., S.C., 174 S.E.2d 155 (1970). At any rate the plaintiff qualified long before trial and no prejudice to the defendant has resulted or can result. Theodore v. Zurich General Accident & Liability Co., 364 P.2d 51, 56 (Alaska 1961). *Cf.* Grinels v. Legg, 208 Va. 63, 155 S.E.2d 56 (1967).

█ It was alleged in the complaint that the decedent was injured through the negligence of the defendant, through the defendant's failure to provide a reasonably safe place to work, and through the defendant's violation of the Safety Appliance Act. At the trial it was shown that the decedent's injuries resulted from the gross carelessness and negligence of a fellow employee. Therefore, defendant complains that the evidence did not comply with the pleadings. This objection is without merit. Federal Rule of Civil Procedure 15(b) provides in part:

> Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits.

At the conclusion of the evidence the jury was instructed that the defendant was liable to the plaintiff as a matter of law and that its only task was to assess the damages. Clearly the facts surrounding the accident were known to the defendant long before trial and it was not prejudiced in the least by plaintiff's failure to specify correctly the exact basis of liability.

█ The remainder of the objections concern questions of damages. At the trial plaintiff introduced Dr. William Sandridge, Chairman of the Economics Department of Roanoke College, who testified, over objection of the defendant, about projected increases in the salary which the defendant could have expected to receive. He first averaged the decedent's income for the year of death and the two preceding years and arrived at a figure of approximately $9,200. He then took decedent's age of 46 and calculated on the basis of commonly used mortality tables that the decedent could have expected to live 26 more years. Dr. Sandridge testified that he projected a 5% wage increase each year based on a 2% productivity increase and 3% inflationary increase. On this basis he calculated that the decedent could have earned $493,675 through age 72 or $345,001 through age 65. The defendant strenuously contends that this evidence was speculative and conjectural and should not have been admitted.

Courts have split on the question whether juries should be allowed to consider future trends in the purchasing power of money. Some have suggested that a topic which is a matter of controversy even among the most intelligent economic thinkers in the nation is certainly beyond the competence of any jury. It has also been pointed out that the raising of such an issue may tend to lead the jury into collateral issues. *See* Sleeman v. Chesapeake & Ohio Ry., 414 F.2d 305 (6th Cir. 1969); McWeeney v. New York, N. H. & H. R. R., 282 F.2d 34 (2nd Cir.) cert. denied, 364 U.S. 870, 81 S.Ct. 115, 5 L.Ed.2d 93 (1960). Armentrout v. Virginian Ry., 72 F.Supp. 997 (S.D.W.Va.1947), rev'd on other grounds, 166 F.2d 400 (4th Cir. 1948).

Other courts have pointed out that some inflation over a period of years seems to be a fact of life and that, as a

practical matter, juries can scarcely be prevented from considering such elements in their deliberations. "In determining what constitutes a reasonable amount of damages the shrinking purchasing power of the dollar must be borne in mind." Hord v. National Homeopathic Hospital, 102 F.Supp. 792, 796 D.D.C.1952) (Holtzoff, J.). *See* Tullos v. Corley, 337 F.2d 884 (6th Cir. 1964) (applying Tennessee law); Thomas v. Conemaugh Black Lick R. R., 133 F. Supp. 533 (W.D.Pa.1955). *Cf.* Southern Pacific Co. v. Zehnle, 163 F.2d 453 (9th Cir. 1947); Vaughan v. Southern Bakeries Co., 247 F.Supp. 782, 789 (D.S.C. 1965). The United States Court of Appeals for the Fourth Circuit apparently has not considered the question. The question before the jury was the pecuniary loss which would be suffered by the plaintiff and her son in the future. The probability of increases in decedent's income was certainly relevant to that issue. It seems unlikely that their conclusions will be any less valid from having heard the testimony objected to, and they may be much more correct than otherwise. Inflation is a topic of almost universal discussion and it seems improbable that the jury could avoid taking it into account even in the absence of any testimony about it. The defendant cross-examined Dr. Sandridge and also argued its analysis of the trends, which the jury apparently did not accept. Each day juries are required to assess damages for future pain and suffering, which are also somewhat speculative, and the court believes that the defendant was not unfairly prejudiced by the admission of Dr. Sandridge's testimony.

■ Another contention advanced by the defendant is that it should have been allowed to show the net wages, as opposed to the gross wages, of the decedent. It argues strongly that it should have been allowed to show the amount of the income taxes paid by the decedent and to have the jury instructed that the damages recoverable were not subject to tax. The weight of authority appears to be otherwise. Boston & Maine R. R. v. Talbert, 360 F.2d 286, 291 (1st Cir. 1966); McWeeney v. New York, N. H. & H. R. R., 282 F.2d 34 (2nd Cir. 1960); Rouse v. New York, C. & St. L. R. R., 349 Ill.App. 139, 110 N.E.2d 266 (1953); Hoge v. Anderson, 200 Va. 364, 106 S. E.2d 121, 124 (1958). One difficulty about instructing the jury on the nontaxability of damage recoveries is that the interest paid in the future on the amount which is the present value of the pecuniary loss will be subject to tax. It would be difficult even for a certified public accountant to determine readily what the real tax difference would be, although some difference undoubtedly exists. Therefore, the court feels constrained to follow the more traditional authority on this point.

■ The defendant further objects to the court's action in allowing the plaintiff to testify how the money received by the decedent was spent. Of course this evidence was relevant to the pecuniary loss sustained by the plaintiff. The objection is without merit.

■ The main thrust of the defendant's objections is that the verdict is excessive. It points out that the sum of $345,000 invested at 5% would yield an annual income of $17,250 without any impairment of the principal. The court agrees with the defendant that the jury made too high a determination of the pecuniary loss suffered by the decedent's widow and son. The real question is: To what amount should the jury verdict be reduced?

Bearing in mind the instruction of the court to the jury on the measure of damages which reads:

> In assessing damages, the jury should take into consideration the pecuniary loss sustained by the death of plaintiff's decedent and determine what amount of money will fairly and reasonably compensate the surviving widow and dependent son for such pecuniary loss; and in determining such amount, the jury should determine the aggregate amount of contributions in

pecuniary benefits which the survivors would have received, and render a verdict in a sum equal to the aggregate amount, reduced to its present value.

You are further instructed to apportion the recovery as between the surviving widow and the son, according to the loss of each, and in determining the amount to be allotted to the son, you may consider loss of parental care and guidance.

Applying this law to the facts of this case, it is the judgment of this court that a total award of $200,000 will fairly and reasonably compensate the surviving widow and dependent son for their pecuniary loss. The recovery should be divided $150,000 to the widow and $50,000 to the son.

The plaintiff is accorded fifteen days from this date to notify the court and opposing counsel whether she will accept a remittitur of damages to $200,000, without interest. If the plaintiff refuses to agree to such a remittitur, a new trial will be awarded.

Defendant will pay the taxable costs.