No. 12104

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

CHAROLETTE L. RESNER, Administratrix of
the Estate of Herbert R. Resner, Deceased,

Plaintiff and Appellant,

-vs-

THE NORTHERN PACIFIC RAILWAY, a Wisconsin
Corporation,

Defendant and Respondent.

---

Appeal from: District Court of the Fourth Judicial District,
Honorable Jack L. Green, Judge presiding.

Counsel of Record:

For Appellant:

Daniel J. Shea argued, Missoula, Montana.

For Respondent:

Garlington, Lohn and Robinson, Missoula, Montana.
J. C. Garlington appeared and Lawrence F. Daly, argued,
Missoula, Montana.

---

Submitted: September 20, 1972

Decided: JAN 12 1973

Filed: JAN 12 1973

*Thomas J. Kearney*
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This appeal arose out of a wrongful death action brought under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. Herbert R. Resner and his section foreman, Benny Adams, were killed when the track motor car on which they were riding collided with a Northern Pacific freight train on August 15, 1967. The collision occurred between Alberton and Cyr, Montana, between Mileposts 158 and 159 on the Northern Pacific tracks. At the time of their death, both Resner and Adams were employees of the defendant railroad company and were acting within the scope of their employment. Charolette L. Resner, widow of Herbert R. Resner and administratrix of his estate, brought this action for his wrongful death on behalf of herself and their children. Trial with a jury was held in the district court of the fourth judicial district, Mineral County, Hon. Jack L. Green, presiding.

By special verdict, the jury found Northern Pacific Railway negligent in two ways: (1) Failure to enforce, observe and obey the safety rules of the railroad for obtaining and using train lineups and operating track motor cars, and (2) failure, by and through its agent Adams, to see and observe the approaching train and avoid the collision. Resner was found to be ten percent contributorily negligent. The jury returned a verdict for plaintiff in the amount of $175,000. In answer to special verdict questions, the jury found five percent to be a reasonable rate of increase in wages and prices to determine future damages, and five percent to be a reasonable rate of discount to be used in determining the present worth of future damages.

The evidence concerning future earnings was introduced through the testimony of plaintiff's witness Dr. George B. Heliker, a recognized expert in the field of labor economics. He gave several opinions with regard to future damages as concerns

this case. One opinion was that Herbert Resner could reasonably have expected an annual five percent increase in wages during the remainder of his work life expectancy. He testified that since World War II wages have increased at least five percent per year and that as applied to Resner, his wages as a section man kept pace with the increases of section men throughout the United States. Too, wages for section men continued to increase after Resner's death. Resner's base hourly wage at the time of his death was $2.6699. By December 1970, this rate had increased to $3.4444. This testimony was not controverted at trial by defendant railroad company.

Dr. Heliker also testified extensively on the discount rate to be applied in reducing future earnings to present worth. The process of discounting involved taking the product of the base earning capacity plus the growth rate of wages and applying a discount rate to reduce those amounts to present worth. As a result of his calculations, he concluded that a five percent discount rate was most reasonable. In so finding, he noted that it was "strictly accidental" that the wage growth rate equaled the discount rate. He further concluded that future economic losses could best be estimated by projecting them on a flat rate basis, that is, no increase for wage growth and no decrease for discount.

On February 23, 1971, defendant filed a motion for entry of judgment, requesting the jury's verdict be reduced. The motion stated (1) it was erroneous for the jury to be allowed to speculate on future wage increases and to offset those increases against the discount to present worth, (2) by the wording of the special interrogatories to the jury the future damages would be increased, by failure to apply the discount rate, to a figure not supportable by the evidence.

On April 20, 1971, Judge Green granted defendant's motion for entry of judgment and recomputed the plaintiff's award to be

$91,740.49, plus costs. A number of plaintiff's motions were denied. On April 30, 1971, defendant sent plaintiff a check for the amount of the judgment, plus costs. Plaintiff refused tender and returned the check to defendant.

On May 3, 1971, plaintiff moved to alter or amend the judgment, stating that the defendant had previously agreed to have the interest on the judgment run from February 10, 1971, and that interest was not included in the check. Defendant deposited the check for the amount of the judgment plus costs in a savings account in plaintiff's name at the Southside National Bank, Missoula, Montana on May 19, 1971. Defendant contended the deposit of the check in the bank constituted compliance with section 58-423, R.C.M. 1947, relating to the extinction of money obligations, and thereby the interest on the judgment was terminated. Plaintiff, on the other hand, maintained that since the defendant did not deposit the amount of interest on the judgment along with the judgment, the statute was not satisfied and the interest did not terminate. Defendant conceded that it had been previously agreed that interest should run from February 10, 1971. The court ruled that plaintiff should receive interest from February 10, 1971 through May 24, 1971, and later overruled plaintiff's objections to the court deducting ten percent for Herbert Resner's contributory negligence.

On June 21, 1971, final judgment for $91,740.49, plus costs and interest was entered by the court. Plaintiff appeals from that final judgment and all related rulings.

The basic issue here is whether the trial court was correct in granting defendant's motion for entry of judgment. In granting the motion, the court recomputed the jury's award, reducing it considerably. At the hearing on plaintiff's motion to amend, May 28, 1971, the court indicated that the reason for not using the five percent figure deduced by the jury to be a reasonable figure for determining future wage increases was that "as a matter of law * * * the question of inflation is speculative,

- 4 -

conjectural, uncertain, and is an improper element of damages * * *." We hold the trial court was in error in granting defendant's motion.

The jury was allowed to consider extensive expert testimony on the subject of future wage increases. Dr. Heliker testified at length concerning future wage increases. Based on his appraisal of past economic history of this country, he indicated why wages and prices will continue to rise in the future:

"* * * because prices have been increasing, the value of money has been decreasing or declining. It is necessary to pay higher wages in order to maintain purchasing power and because output per man hour has been increased steadily, you see * * * it [man's productivity] has been rising the entire period very steadily at a steady rate. At the present time, it is rising around about 3 percent per year, which means that even if prices didn't increase at all, that wages would tend to rise about 3 percent per year simply because labor is more active. It turns out more per man hour, so it is possible to pay higher wages. Two reasons why wages will go up is because productivity increases and they go up also because it is necessary that they go up, prices go up."

This Court, as well as others, has allowed the testimony of actuaries and economists to produce testimony on future earning capacity, recognizing that such testimony removes considerable speculation and conjecture from the jury's deliberation, Krohmer v. Dahl, 145 Mont. 491, 495, 402 P.2d 979; Scruggs v. Chesapeake and Ohio Railway Company, 320 F.Supp. 1248, 1251; Magill v. Westinghouse Electric Corporation, 327 F.Supp. 1097, 1105.

The jury determined that five percent was a reasonable figure to determine future wage increases. It apparently accepted Dr. Heliker's testimony in full on that point, which it had a right to do. Defendant did not produce expert testimony demonstrating a different figure to be more appropriate. Dr. Heliker explained how he arrived at the five percent figure:

"Now actually if you add together the rates of increase of prices and productivity in post-war periods, post-second World War period, you add them together, you would get just about exactly the rate of increase of wages that we have had

over this period since the second World War and increased prices between 1 and a half to 2 percent, much higher at the present time. Over that whole period, it has averaged somewhere around 1 and a half to 2 percent. Productivity has increased at somewhere around 3 to 3 and a half percent.

"Now if you add those two things together and you get just about exactly the rate of increase from wages, about 5 percent or a little more."

Dr. Heliker's computations were extensive and involved, but essentially he said:

"* * * here is what happened in the past and, as far as I can see, this same thing is going to happen in the future. * * *"

At the same time Dr. Heliker predicted a five percent wage growth rate, he foresaw five percent to be a reasonable discount rate. Although the wage growth rate and the discount rate were both five percent, the figures were arrived at independently. In selecting the five percent figure, Dr. Heliker rejected the historical four percent figure used as a discount rate. As a result, the wage growth rate equaled the discount rate, thereby canceling each other. Of necessity, the effect would have been that the jury's special verdict would only be reduced by Resner's ten percent contributory negligence. However, the trial judge's ruling after the special verdict was returned that inflation was speculative and not a proper element of damages, removed the cancellation effect. The judgment ignored the five percent future wage growth rate, but used the five percent discount rate.

Defendant repeatedly asserted in its motion for entry of judgment and in its brief before this Court, that future wage increases are speculative and conjectural. This is not enough. This Court's function in a Federal Employers' Liability Act case is clear. In Lavender v. Kurn, 327 U.S. 645, 653, 66 S.Ct. 740, 90 L.Ed 916, 923, a Federal Employers' Liability case, the United States Supreme Court said:

"It is no answer to say that the jury's verdict involved speculation and conjecture. Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a

measure of speculation and conjecture is required
on the part of those whose duty it is to settle
the dispute by choosing what seems to them to be
the most reasonable inference.  Only when there is a
complete absence of probative facts to support the
conclusion reached does a reversible error appear.
But where * * * there is an evidentiary basis for
the jury's verdict, the jury is free to discard or
disbelieve whatever facts are inconsistent with its
conclusion. <u>And the appellate court's function is
exhausted when that evidentiary basis becomes apparent,
it being immaterial that the court might draw a con-
trary inference or feel that another conclusion is
more reasonable.</u>"  (Emphasis added).

Here, the evidentiary basis for determining the discount rate

and the future wage growth rate is apparent to us, and most

certainly it was to the jury.

Furthermore, the testimony of Dr. Heliker was not the only

evidentiary basis on which the jury could make its award.  There

was other evidence equally as convincing.  For example, certain

wage agreements, not yet finalized at the date of trial, per-

taining to contracts between the Brotherhood of Maintenance of Way

Employees and Burlington Northern Railway, were introduced into

evidence.  The wage increases in those contracts have now been

scheduled and indicate substantial wage growth over even a short

period of time.  Such evidence offered the jury an evidentiary

basis for its decision, independent of Dr. Heliker's testimony.

It would be sufficient to reverse the trial court's ruling

on the basis of <u>Lavender</u> alone.  However, since both plaintiff

and defendant raise issues concerning future wage increases, we

shall determine them.  We are aware that federal law governs

damages in a Federal Employers' Liability Act case.  Further, as

defendant pointed out, the United States Supreme Court held in

Chesapeake & Ohio Railway Company v. Kelly, 241 U.S. 485, 491,

36 S.Ct. 630, 60 L.Ed. 1117, 1122:

"* * * that when future payments or other pecuniary
benefits are to be anticipated, the verdict should be
made upon the basis of their present value only."

Defendant relied heavily on <u>Kelly</u> and on the more recent

case of Sleeman v. Chesapeake  and Ohio Railway Company, 414 F.2d

305, 307, wherein the court said:

"To date [the Kelly case] has not been amended
or overruled, and it was error to fail to apply
it to the computation of future earnings."

However, there that court went on to point out:

"As to the inflationary trend offset, this
record provides no evidentiary basis for the
decision of the District Judge." (Emphasis added).

That cannot be said in the instant case; clearly, there was an
evidentiary basis for the jury's finding of five percent to be
a reasonable rate of increase in future wages. Therefore, we
find Sleeman not applicable.

We are not persuaded by the cases cited by defendant holding
future wage growth as speculative. In Scruggs v. Chesapeake and
Ohio Railway Company, 320 F.Supp. 1248, 1250, 1251, a Federal
Employers' Liability Act case cited by plaintiff, the opposite
point of view is taken. There the court said:

"Courts have split on the question whether juries
should be allowed to consider future trends in
the purchasing power of money.

"* * *

"The question before the jury was the pecuniary loss
which would be suffered by the plaintiff and her son
in the future. The probability of increases in
decedent's income was certainly relevant to that issue.
It seems unlikely that their conclusion will be any
less valid from having heard the testimony objected
to, and they may be much more correct than otherwise.
Inflation is a topic of almost universal discussion
and it seems improbable that the jury could avoid
taking it into account even in the absence of any
testimony about it. The defendant cross-examined Dr.
Sandridge and also argued its analysis of the trends,
which the jury apparently did not accept. Each day
juries are required to assess damages for future pain
and suffering, which are also somewhat speculative,
and the court believes that the defendant was not
unfairly prejudiced by the admission of Dr. Sandridge's
testimony."

We find the situation in Scruggs and the instant case to be
analogous. Also, we find further support for allowing the jury's
determination to stand undiminished in Grunenthal v. Long Island
R.Co., 393 U.S. 156, 89 S.Ct. 331, 21 L ed 2d 309, 312, 313. There,
in the original action, 292 F.Supp. 813, 815, the plaintiff moved
to amend the ad damnum clause of the complaint to increase it in
conformity with the higher verdict rendered by the jury. In

granting the motion, the judge indicated there was a likelihood, on the basis of the evidence presented, that the discount rate may be setoff by future increases. As in the instant case, the testimony went unrefuted. In a 2 to 1 decision, the court of appeals remanded the case for a new trial unless the plaintiff agreed to accept a reduction in the amount of the award. Grunenthal v. Long Island R.Co., 388 F.2d 480,484.

The United States Supreme Court, on the other hand, agreed with the district court decision and reversed the court of appeals. Judge Brennan, delivering the opinion for the court, noted that the trial judge considered the petitioner's present salary "plus likely increases over a life expectancy of 27.5 years" and then went on to say:

> "The trial judge * * * appraised the evidence on future earnings as sufficient to support an award of $150,000 for loss of future wages in light of the 'convincing testimony not refuted * * * demonstrating the steady wage increases in recent time for work equivalent to that rendered by plaintiff, and the strong likelihood that similar increases would continue.'

> "We cannot say that the trial judge's view that the jury might properly have awarded $150,000 for loss of future earnings is without support in the evidence."

The court more than tacitly approved a calculated and expert investigation of future wage increases to be a proper and necessary element in awarding future damages. To do otherwise is to ignore reality. Here, defendant would have this Court take the position of an ostrich with his head in the sand. Economic reality requires us to consider not only what the plaintiff is to receive in theory, but in fact. Abstract rules of law are of little comfort to a plaintiff whose injuries remain unrequited. The United States Supreme Court has recognized that where competent expert testimony supported by mathematical data is presented concerning future damages, more certainty is added to the jury's deliberation.

In Krohmer v. Dahl, 145 Mont. 491, 496, 402 P.2d 979, this Court recognized that "the testimony of a specialist [in economics]

presented the jury a reasonable basis upon which to estimate with some degree of certainty the probable future earnings of the deceased." In Krohmer, the Court cited with approval the New Mexico case of Turrietta v. Wyche, 54 N.M. 5, 212 P.2d 1041, 1047, wherein it was said "the probability of its [a man's future earning capacity] increase or decrease in the future ought to be admitted." If it is admitted, it ought to be considered by the jury. Surely here, the defendant had as much opportunity to refute the future wage increase of a railroad section hand as the plaintiff had the opportunity to prove it.

The Alaska Supreme Court in a recent non-Federal Employers' Liability Act case, Beaulieu v. Elliott, (Alaska 1967), 434 P.2d 665, 671, considered the subject of future wage increase:

> "Annual inflation at a varying rate is and has been with us for many years. There is no reason to expect that it will not be with us in the future. This rate of depreciation offsets the interest that could be earned on government bonds and many other 'safe' investments. As a result the plaintiff, who through no fault of his own is given his future earnings reduced to present value must, in order to realize his full earnings and not be penalized by reduction of future earnings to present value, invest his money in enterprises, other than those which are considered 'safe' investments, which promise a return in interest or dividends greater than the offsetting rate of annual inflation."

There can be/question that the award in the instant case was a generous one, but not so generous as to take it out of the realm of possibility presented by the evidence. It is not for this Court to determine the award to be given to plaintiff, but only whether the jury had a reasonable basis, supported by the evidence, to award the sum. We believe the jury had that basis.

Plaintiff contends defendant's failure to object to certain jury instructions waived the defendant's right to later complain. The specific instructions referred to were (1) Instruction No. 26, regarding what the jury might consider in awarding damages, and (2) Instruction No. 34, the special verdict form. Defendant awaited the jury's verdict before asserting, in defendant's motion for entry of judgment, that the jury should not have been allowed

- 10 -

to speculate on future wage increases and that the special interrogatories were improperly worded. It is fundamental that failure to object to the giving of instructions at trial precludes raising the issue on appeal. In this case defendant raised the issue to the trial judge after the jury had rendered its verdict. We cannot allow defendant to wager on the outcome of the jury's deliberation before availing itself of the proper procedural remedies. Since the objection cannot be raised on appeal, then, likewise, it cannot be raised at the post-trial level.

Plaintiff raises the issue of interest on the judgment contending that since defendant's deposit into the bank account did not include the interest from February 10, 1971, as agreed, then the deposit did not satisfy the statute and interest continued to run. The statute, section 58-423, R.C.M. 1947, reads:

> "An obligation for the payment of money is extinguished by a due offer of payment, if the amount is immediately deposited in the name of the creditor, with some bank of deposit within this state, of good repute, and notice thereof is given to the creditor."

Plaintiff relies on the word obligation, implying that its definition includes all interest to the date of deposit. Plaintiff had, prior to the date of deposit, refused tender of the deposited amount on the same ground--that interest from February 10, 1971 was not included. Plaintiff, however, is merely arguing rhetoric. Defendant in good faith made an attempt at substantial compliance with the statute in order that future interest would not continue to increase. The trial court's ruling in the first amended judgment, that the defendant pay interest on the $91,740.49, from February

10, 1971 to May 24, 1971, shall remain in effect. The result is that all interest on that amount terminated on May 24, 1971, by the terms of the statute and by order of the trial court.

Our decision reinstates the jury's award of $175,000, less ten percent for Resner's contributory negligence, resulting in a judgment of $157,500. The rules for interest on judgments were correctly stated by the California Supreme Court in Stockton Theatres, Inc. v. Palermo, 55 Cal.2d 439, 11 Cal.Rptr. 580, 582, 360 P.2d 76:

> "A judgment bears legal interest from the date of its entry in the trial court even though it is still subject to direct attack. * * * When a judgment is modified upon appeal, whether upward or downward, the new sum draws interest from the date of entry of the original order, not from the date of the new judgment. * * * On the other hand, when a judgment is reversed on appeal the new award subsequently entered by the trial court can bear interest only from the date of entry of such new judgment."

The second rule enunciated is applicable here.

This cause is returned to the district court to compute the interest to be granted in accordance with the law, not inconsistent with this decision.

_____
Associate Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Associate Justices.

Mr. Justice Wesley Castles dissenting:

I dissent. The majority opinion states that the jury returned a verdict in the amount of $175,000. This is not legally accurate. Rather, the jury answered a special verdict question in that amount. And, as the trial court carefully pointed out in its closing remarks, the jury was to answer only the specific questions posed in the special verdict. The court, not the jury, was to make the determination of final damages and enter judgment accordingly. As provided in the Montana Rules of Civil Procedure, if a matter is submitted to the jury in the form of a special verdict an issue not specifically included in the special verdict may be decided by the court, and each party is deemed to have waived its right to trial by jury on that specific issue.

The vice of the majority opinion is that it approves speculative, highly speculative, inflation trends for thirty years as to future wage increases. Speculation on the future of railroads, much less the future of jobs and wage increases, is a never-never land. Except for one Federal District Court case, Scruggs v. Chesapeake and Ohio Railway Company, 320 F.Supp. 1248, I have been unable to find any Federal Employers' Liability Act case to support the majority opinion. I believe the correct law to be that stated by the 6th Circuit in 1969 in Sleeman v. Chesapeake & Ohio Railway Company, 414 F.2d 305,308, where that court said:

> "Nor do we encourage the trial courts of our circuit to explore such speculative influences on future damages as inflation and deflation.
>
> "Of course, the nation's economic history since the 1930's would appear to make the use of present wages as the standard for loss of future earnings somewhat unfair to plaintiffs. But as to the future, the inflation versus deflation debate rages inconclusively at the highest policy levels of our government, in national electoral campaigns, in learned economic journals and is exemplified in the daily gyrations of the stock markets. The debate seems unlikely to be resolved satisfactorily

in one personal injury trial. And if testimonial resolution of this factor bearing on the future is attempted, the door is opened to similarly speculative and debatable offsets tending in other directions. See McWeeney v. New York N.H. & H.R.R., 282 F.2d 34 (2d Cir. 1960)."

In *Sleeman* the court found the following quotation from

2 Harper & James, The Law of Torts, § 25.11, to be applicable:

"'Future trends in the value of money are necessarily unknown and so always render such damages speculative in a way we cannot escape. If the estimates represent a straight-line projection of present living costs, they will be frustrated by fluctuations either way. If prophecy of change is heeded, frustration will follow if no change, or the opposite change, occurs. When courts have consciously grappled with the problem they have either found all prophecy too speculative and so, perforce, have taken the equally speculative course of betting on a continuance of the status quo; or they have made intuitive and not always very wise judgments that present conditions represent a departure from some imaginary norm to which they think we shall rapidly return. It is not at all clear that courts would be willing to hear experts on the matter, or that they would get much real help if they did. For the most part the problem--which is inevitably present in every case of future loss--is not analyzed and the present value of money is assumed to be the proper basis.'"

*Sleeman* was confirmed by the 6th Circuit in 1970 in

Petition of United States Steel Corporation, 436 F.2d 1256, 1280:

"It is equally well settled in this Circuit that the prospect of a future decline in the purchasing power of the dollar may not be used to offset the reduction to present value."

I would affirm the judgment.

Wesley Castles
Associate Justice.