No. 13097

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

HELEN TORCHIA, individually and as
a personal representative,

Plaintiff and Appellant,

-vs-

BURLINGTON NORTHERN, INC.,
a corporation,

Defendant and Respondent and
Cross Appellant.

---

Appeal from:  District Court of the Eighth Judicial District,
Hon. Paul G. Hatfield, Judge presiding.

Counsel of Record:

For Appellant:

Gough, Booth, Shanahan and Johnson, Helena, Montana
Cordell Johnson argued, Helena, Montana

For Respondent:

Hoyt and Bottomly, Great Falls, Montana
John C. Hoyt argued and Richard V. Bottomly argued,
Great Falls, Montana

---

Submitted:  June 6, 1977

Decided: AUG 3 1977

Filed:

*Thomas J. Kearney*

Clerk

Hon. M. James Sorte, District Judge, delivered the Opinion of the Court:

This is a wrongful death action filed in the district court, Cascade County, under the Federal Employers' Liability Act, 45 U.S.C. §51 et seq. (FELA).

Plaintiff Helen Torchia as personal representative of the estate of decedent Gennaro Torchia, and on behalf of their children, sued defendant Burlington Northern, Inc. for damages occasioned by the death of her husband Gennaro Torchia.

Gennaro Torchia, a Burlington Northern fireman, was killed in a head-on collision between two railroad trains. In her complaint plaintiff alleged negligence under the FELA and prayed for compensatory damages. She also, individually and as personal representative of the minor children, alleged willful and wanton conduct and prayed for punitive damages. In its amended answer, defendant admitted liability for negligence under the FELA. The trial court denied defendant's motion to strike those allegations from the complaint which had reference to punitive damages.

The case was tried to a jury on the issues of compensatory damages and conduct which would form the basis for an award of punitive damages. The jury returned a verdict for plaintiff for compensatory damages only, in the amount of $580,000. The jury found the facts did not justify an award of punitive damages. Defendant appeals from the judgment entered on the jury verdict. Plaintiff crossappeals from an order denying her motion for a new trial on the issue of punitive damages.

The facts of this care are:

At approximately 11:45 p.m. on May 11, 1971, at a point near Sheffels on the Burlington Northern line between Great Falls

- 2 -

and Havre, there was a head-on collision between two trains. Four of defendant's employees were killed and several others injured. One of those killed was plaintiff's husband, Gennaro Torchia.

The movement of trains between Great Falls and Havre is controlled out of the dispatcher's office in Havre. Trains are operated over this segment of the track by train orders and clearances. The Havre to Great Falls route consists of but one track. Thus, the orders and clearances are significant in controlling train movements where a "meet" is anticipated between trains traveling in opposite directions.

A dispatcher issues various orders to the operators at various stations on the line. The orders are communicated from the dispatcher to the operator by telephone. The operator then copies the orders on train order forms. The orders are then read back to the dispatcher to insure the copied orders are correct.

It is also the responsibility of the dispatcher to issue clearances which are communicated to and copied by the operator in the same manner as are train orders. A train is not allowed to move over a track which is controlled by train orders and clearances unless a proper clearance is issued for the train movement. Typically, orders and clearances are not issued until the train has been "called", that is, assembled and ready for departure. Generally, the conductor in charge of the train and crew picks up the orders and clearances from the operator. When it becomes necessary to issue a second order and clearance on a given train movement, the first orders and clearance are taken up and destroyed.

In 1971 it was and had been for many years the practice in Havre for the operator to place copies of the completed clearances and orders on the train register desk in the Havre Relay Office. There was no procedure whereby it could be determined when the orders were actually picked up by the conductor.

In this case Dispatcher Newell was on shift from 7:30 a.m. until 3:30 p.m. on May 11, 1971. He issued orders and a clearance at 3:08 p.m. for the Havre to Great Falls train, designated as "Extra 2013 West." Newell expected the train would be called momentarily. Operator Wirtzberger then placed the clearance and orders on the train register desk. At that time Newell was unaware a train was being assembled in Great Falls destined for Havre, also to leave on May 11.

Newell turned over his dispatching district to Dispatcher McMaster at 3:30 p.m. Pursuant to the then operative "staggered shift" work system, McMaster who was on duty dispatching another district, was, in addition, given responsibility for Newell's district until 4:30 p.m. Newell explained to McMaster that he had cleared the Havre to Great Falls train. The clearance is reflected in the clearance record kept by the dispatcher. There was no dispatching activity during the hour McMaster had responsibility for the district so no further entries were made in the dispatcher's book. At the end of his shift McMaster merely initialed the record book and passed it on to Dispatcher Magnuson.

There is a dispute in the evidence as to whether McMaster verbally informed Magnuson the Havre to Great Falls train was cleared when the dispatching district was turned over to him. McMaster testified he informed Magnuson of the clearance. Magnuson testified no such statements were made. However, there is no

- 4 -

dispute the records McMaster turned over to Magnuson clearly indicated the train had been cleared at 3:08 p.m. by Newell.

Magnuson, during his dispatching shift, was informed that a train would soon be leaving Great Falls bound for Havre. To arrange for a "meet" between the respective trains whereby one would take a side track as the other passed by, Magnuson issued a second order and clearance at 8:18 p.m. The second order and clearance were communicated to Operator Porter, who prepared them and placed them on the train register desk.

Sometime between the time Operator Wirtzberger placed the first order and clearance on the train register desk and the time the second order and clearance were placed on the desk, Conductor Freeburg, conductor for "Extra 2013 West", came into the Havre Relay Office and picked up the first orders and clearance. He was not seen picking up the orders and clearance by any dispatcher or operator.

Plaintiff's husband, Gennaro Torchia, was a member of the crew of the Great Falls to Havre train. Under the second orders issued to that train, but unknown to Conductor Freeburg of "Extra 2013 West" and its crew, it was to proceed to Portage where a "meet" would take place. The Havre to Great Falls train was to wait at Portage to permit the Great Falls to Havre train to take the siding.

The Havre to Great Falls train passed the siding at Portage without stopping and, shortly beyond Sheffels, the head-on collision between the two trains occurred. Gennaro Torchia was killed instantly. At the time of his death he was 49 years of age. Additional pertinent facts will appear later in this opinion.

Defendant raises numerous points of error on appeal. For this opinion we will discuss eight determinative issues:

1. Whether punitive damages are recoverable in an action under the FELA?

2. Whether the verdict should be set aside as being excessive and based on passion or prejudice?

3. Whether the voir dire examination by counsel for plaintiff was improper?

4. Whether admission of evidence pertaining to future railroad retirement benefits was error?

5. Whether the trial court erred in admitting certain testimony given by plaintiff's expert witness in the area of economics?

6. Whether a potential witness for defendant, whose name was not listed on the pretrial order, should have been permitted to testify?

7. Whether the trial court erred in selection of instructions and form of verdict?

8. Whether admission into evidence of a portion of the Federal Railroad Administration Accident report was prejudicial error?

Issue 1. A major contention of defendant is that punitive damages should not have been an issue in the case, and evidence and proposed instructions related thereto should not have been permitted. Defendant asserts such issue should have been removed upon its motion to strike. Defendant alleges punitive damages are not allowable under the FELA, and allowing plaintiff to introduce proof not only of liability, but also on the question of punitive damages was prejudicial and resulted in an excessive award as a result of passion and prejudice on the part of the jury.

As noted, defendant admitted its liability for ordinary negligence. At the outset we reject defendant's theory that upon such an admission, plaintiff's case must be limited solely to the issue of damages. Under the facts of this case plaintiff could prove her case as she wishes subject, of course, to the ordinary control and discretion exercised by the trial judge.

Whether or not evidence of punitive damages has a proper place in an action under the FELA, the jury here refused to allow such damages to plaintiff. In view of the evidence presented by plaintiff and the result reached by the jury, the presence of the element of punitive damages did not prejudice defendant in this case. Slifer v. Yorath, 52 Mont. 129, 155 P. 1113; Martin v. Corscadden, 34 Mont. 308, 86 P. 33. Further, the same reasoning applies with reference to the alleged error in the giving of instructions on willful and wanton misconduct and other matters relative to punitive damages. The salient fact remains the jury refused to award such damages and, in fact, specifically found there was no evidence of conduct which would form the basis for punitive damages. Defendant suffered no prejudice as a result. Hill v. Chappel Bros. of Montana, Inc., 93 Mont.92, 18 P.2d 1106.

Issue 2. Was the jury verdict excessive and based upon passion and prejudice?

Defendant asserts there must be substantial evidence in the record upon which the jury award can be predicated, citing Montana cases. While there was more than substantial evidence in the record to justify the jury's award, nevertheless this is not the applicable standard under the Federal Employers' Liability Act. In Resner v. The N.P.Railway, 161 Mont. 177, 505 P.2d 86

- 7 -

(1973), this Court quoted the standard as set out in Lavender v.

Kurn, 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L ed 916, 923, a

Federal Employers' Liability Act case. There the United States

Supreme Court said:

> "'It is no answer to say that the jury's verdict
> involved speculation and conjecture. Whenever facts
> are in dispute or the evidence is such that fair-
> minded men may draw different inferences, a measure of
> speculation and conjecture is required on the part
> of those whose duty it is to settle the dispute by
> choosing what seems to them to be the most reasonable
> inference. Only when there is a complete absence of
> probative facts to support the conclusion reached does
> a reversible error appear. But where * * * there is an
> evidentiary basis for the jury's verdict, the jury is
> free to discard or disbelieve whatever facts are in-
> consistent with its conclusions. <u>And the appellate
> court's function is exhausted when that evidentiary
> basis becomes apparent, it being immaterial that the
> court might draw a contrary inference or feel that an-
> other conclusion is more reasonable.</u>'(Emphasis added.)"
> 161 Mont. 183.

Plaintiff's evidence of damages was almost entirely uncon-

tradicted. Through the testimony of various witnesses, plaintiff

elicited facts and figures which, when projected into the future

and discounted to present value, would reasonably support a ver-

dict such as was rendered in this case. The trial judge agreed

the verdict was not unjust and a new trial was not granted to

defendant. We refuse to disturb the findings of the jury.

Issue 3. This issue involves alleged improper voir dire

examination of prospective jurors by counsel for plaintiff. Nothing

at all appears in the record suggestive of the statements attributed

to counsel. The law is clear that unless there is a record of

the alleged error, this Court will not consider the matter. Kipp

v. Willoughby, 161 Mont. 432, 506 P.2d 1365; Nissen v. Western

Construction Equipment Co., 133 Mont. 143, 320 P.2d 997. Defendant's

argument in this regard is without merit.

Issue 4. Did the trial court err in allowing the testimony of plaintiff's witness, Judith Kirkness, an employee of the United States Railroad Retirement Board, concerning retirement benefits? The core of defendant's argument is that the witness was asked to make certain assumptions, while the facts forming the basis for such assumptions were not of record or in evidence.

The record shows that, at some time in advance of trial, defense counsel verbally stipulated to the evidence to be elicited from witness Kirkness. In fact, he had so stipulated in a previous FELA action. However, immediately before the instant trial, defense counsel informed counsel for plaintiff Burlington Northern had assigned a Minnesota attorney to direct the case for defendant and as a result the prior stipulation was no longer valid. He then suggested plaintiff call Judy Kirkness as a witness. We note at this point that such tactics on the part of the new counsel are strongly disapproved by this Court.

The proposed evidence and the procedure to be employed in developing it was discussed in chambers and fully considered by the trial judge. The witness was to determine the amount of benefits Gennaro Torchia would have been entitled to upon retirement from the railroad. The factors to be considered in arriving at such a computation are the employee's age, marital status, length of employment, rate of compensation, and length of military service. These facts pertaining to Gennaro Torchia, were substantially in evidence and presented in a correct fashion to the witness for her determination. The resulting testimony was properly admitted as it was based upon evidence before the court. Graham v. Rolandson, 150 Mont. 270, 435 P.2d 263; Burns v. Fisher, 132 Mont. 26, 313 P.2d 1044.

Issue 5. Defendant alleges error in the admission by the trial court of testimony of plaintiff's economic expert, Dr. George P. Heliker, on the issue of economic loss suffered as a result of the death of Gennaro Torchia. It is argued the expert opinions were speculative on future inflationary trends, in forecasting loss of earnings, in forecasting future earnings without considering the impact of income taxes thereon, and in forecasting loss of future Railroad Retirement Benefits.

Proof of the present value of a future economic loss is necessarily uncertain to a degree. Any determination of factors such as growth in the size of the total labor force, output per man/hour, wage trends and inflationary patterns is admittedly grounded in probabilities. However, this does not mean the amount of a future loss is not provable. Such losses are best proved through employment of economic and statistical disciplines, applied to the very factors listed above, as this Court has recognized in numerous prior decisions. Where, as here, the testimony of a specialist presents a jury with a reasonable basis upon which to estimate, with some degree of certainty, the probable future losses occasioned by the death of decedent, such testimony should be admitted. Resner v. The N.P. Railway, supra; Krohmer v. Dahl, 145 Mont. 491, 402 P.2d 979. See Lavender v. Kurn, supra, for a general discussion of trends involving speculation and conjecture in ascertaining damages in FELA actions.

Defendant was aware, pretrial, that plaintiff intended to call Dr. Heliker to testify to precisely those matters defendant now disputes. The opportunity to contest the accuracy of such testimony, through its own expert testimony, was available to defendant. However, it chose not to call an expert witness on these matters.

Issue 6. Did the trial court err in excluding the testimony of defendant's proposed witness S. M. Smiland, with respect to insurance benefits, wages, damages, etc.?

We emphasize here that considerable pretrial discovery and discussion was had in this case, during which the identities of all witnesses were disclosed and listed in the pretrial order. However, the name of S.M. Smiland first appears following plaintiff's case-in-chief. There is no record plaintiff knew witness Smiland, or that he was present in Great Falls during a portion of the trial. He was never introduced to plaintiff and plaintiff was afforded no opportunity to talk to Smiland before his proposed testimony was to begin. Under the circumstances, it was certainly within the discretion of the trial judge to allow or disallow the witness to testify. Sanders v. Mount Haggin Livestock Co., supra.

Issue 7. This issue concerns instructions given and refused by the trial court.

Court's instructions No. 14 and No. 20 were objected to by defendant on the grounds a decedent father's comfort, protection, society, education and companionship are not proper elements of damage recoverable under the FELA. Instruction No. 14 provides in part:

"* * *

"You may also consider and award such sum as you may determine represents the pecuniary value of any loss, if any, sustained by the widow and the family by reason of being deprived of Gennaro Torchia's comfort, protection, society, education and companionship. In considering such pecuniary loss, you may consider the age and life expectancy of the wife and family in relation to the age of the decedent, the disposition of the deceased, whether it was kindly, affectionate, or otherwise, the degree of intimacy existing between the deceased and his family, their station in life, and such other facts shown by the evidence which may throw light upon such loss which the heirs reasonably might have expected to receive from the deceased, had he lived. * * *"

Instruction No. 20 states:

"You are instructed that:

"You have heretofore been instructed on damages which may be allowed to wife and family for the death of Gennaro Torchia.  One of the elements of such damage is the pecuniary value of the society, comfort, care, companionship, protection and education the wife and family have lost by reason of his death.  If you find from the evidence that the deceased did provide society, comfort, care, companionship, protection and education, which went to the moral or physical training and well-being of the widow and family, this loss if it has pecuniary or financial value, may be measured and compensated. * * *"

It is true damages under the FELA are measured by and limited to the pecuniary loss sustained by the survivors as a result of the death of the employee.  Mellon v. Goodyear, 277 U.S. 335, 48 S.Ct. 541, 72 L ed 906; Michigan Central R. Co. v. Vreeland, 227 U.S. 59, 33 S.Ct. 192, 57 L ed 417. Recovery is authorized only to the extent the survivors are shown to have been deprived of a reasonable expectation of financial benefits, assistance or support.  Mellon v. Goodyear, supra; See Anno: 67 ALR2d 745,746.  However, the pecuniary value associated with the loss of parental care, guidance and education the decedent would expectably have given his minor children, is recoverable under the FELA.  Norfolk & Western R. Co. v. Holbrook, 235 U.S. 625, 35 S.Ct. 143, 59 L ed 392; Michigan Central R. Co. v. Vreeland, supra.

In determining the extent of contribution which is reasonable to be anticipated by the beneficiaries, the jury may properly consider evidence the decedent was industrious, thrifty, kind and faithful to his family.  Allendorf v. Elgin, Joliet & Eastern R. Co., 8 Ill.2d 164, 133 N.E.2d 288, 79 ALR2d 241, cert. den. 352 U.S.833, 77 S.Ct. 49, 1 L ed 2d 53, reh.den. 352 U.S. 937, 77 S.Ct. 219, 1 L ed 2d 170.

- 12 -

Contained within the court's instructions No. 14 and No. 20 is language having the effect of limiting recovery to the pecuniary value of losses sustained. Further, the language speaks to limiting losses to those which the survivors reasonably might have expected to receive from decedent, had he lived. Plaintiff's evidence pertaining to the extent of the loss of parental care, guidance and education was ample and uncontradicted, as was the evidence demonstrating the decedent was industrious, thrifty, kind and faithful to his family.

Thus, while there may have been minor variations in the instructions from the accepted measure of damages in FELA actions, they cannot be said to have prejudiced the defendant. The instructions were not totally confined to an FELA death action, there being variations but on those variations no evidence was adduced at trial. We find no prejudice.

Defendant also objects to the giving of court's instruction No. 19, which provides:

"You are instructed that:

"In considering the loss of contribution to the
family from future earnings of decedent you are
instructed that you should first reduce future
earnings to present value using a reasonable rate
of discount for this purpose. The evidence as to
annual inflation which has an effect on depreciating
the value of a dollar should also be considered as
to what extent such depreciation offsets the interest
that could be earned on an award of future earnings.
In addition, you may consider wage increases the
deceased might have expected to receive in arriving
at deceased's true loss of future earnings and
earning capacity."

As previously pointed out, this Court approves of consideration by the jury of the fact of inflation in arriving at an award for loss of future earnings, where the evidence as to annual inflation and related matters is presented, as here, in a competent manner. Resner v. The N.P. Railway, supra.

The trial court refused defendant's proposed instruction No. 8 as being duplicitous. We find it to have been properly refused by the trial court.

The court also refused to give defendant's proposed instructions No. 14, No. 15 and No. 16, on consideration of the impact of income taxes on damage awards. In so doing, the trial court was in accord with the weight of authority. Future income tax liability is not a proper consideration in an award for loss of future earnings. Bracy v. Great Northern Ry. Co., 136 Mont. 65, 343 P.2d 848.

Defendant relies on Burlington Northern, Inc. v. Boxberger, 529 F.2d 284 (1975), for the proposition that future tax liability should be considered in making a damage award. A careful reading of Boxberger, however, discloses that it is an admitted departure from the majority position. The court therein stated that an instruction on the effect of future income tax liability is proper when competent evidence is brought forth at trial showing the likely amount of tax. Defendant here has made no such showing.

A further objection raised by defendant was to the form of the verdict approved by the trial court in that it includes items of compensatory damage not contemplated under the FELA. The same reasoning employed regarding defendant's objection to court's instructions No. 14 and No. 20 is no less applicable in this instance. Defendant was not prejudiced by the form of verdict in this case.

Issue 8. This issue concerns the propriety of admission in evidence of conclusions contained in the Federal Railroad Administration Report of its investigation of the train wreck of May 11, 1971. 45 U.S.C.§41 states:

"Neither the report required by section 38 of this title nor any report of the investigation provided for in section 40 of this title nor any part thereof shall be admitted as evidence or used for any purpose in any suit or action for damages growing out of any matter mentioned in said report or investigation."

During trial counsel for plaintiff read into the record, before the jury, a verbatim copy of certain conclusions contained in the accident report, which were incorporated into the complaint. Counsel was also permitted, over objection, to read to the jury an interrogatory to defendant and the amended answer thereto. The answer also contained accident report conclusions. In neither case was the report itself made a part of the record. At no time was the jury informed the statements being read were taken from the accident report or based on findings of the Federal Railroad Administration.

This Court does not condone such a method of bringing potentially objectionable material before the jury. However, here the error, if any, was harmless. The manifest purpose of the prohibitive legislation is the prevention of the use in evidence of a report which, being issued by a federal agency, has the outward appearance of being conclusive on the facts. The evil to be avoided is the undue weight the jury would give to the report, denominated as such, over other evidence produced at the trial.

Here, it was defendant's own answer to the interrogatory, produced at trial, which was the vehicle for introduction in evidence of certain of the report conclusions. We cannot see how this procedure, given the other evidence produced in this particular case, prejudiced defendant in a substantial manner.

The judgment entered upon the verdict of the jury is affirmed.

Hon. James M. Sorte, District Judge, sitting for Mr. Chief Justice Paul G. Hatfield.

We Concur:

_Gene B. Daly_

_Daniel J. Shea_

_Frank I. Haswell_

_John Conway Harrison_
Justices.