**Freddie L. JOHNSON and Clara Johnson, husband and wife, Plaintiffs,**

v.

**UNITED STATES of America, Defendant and Third Party Plaintiff,**

v.

**Timothy B. HAY, Third Party Defendant.**

**No. CV–77–20–GF.**

United States District Court, D. Montana, Great Falls Division.

April 6, 1981.

on the issue of liability was tried before the court sitting without a jury from December 11 to December 17, 1979. Findings of fact and conclusions of law on the issue liability were entered by the court on August 1, 1980, by which the court determined that Freddie L. Johnson was entitled to recover damages against defendant United States of America in a subsequent trial on the bifurcated issue of damages, diminished by 25% for comparative negligence attributable to the plaintiff.

The trial on the bifurcated issue of damages was tried to the court sitting without a jury. Trial commenced on December 9, 1980 and concluded on December 12, 1980. The parties introduced oral and documentary evidence. At the close of the evidence the parties rested, and the cause was submitted to the court. The parties thereafter filed briefs on all issues. The court enters the following findings of fact and conclusions of law, pursuant to Rule 52(a), F.R. Civ.P., on the issue of damages to be awarded plaintiff, Freddie L. Johnson.

### FINDINGS OF FACT

1. As a direct and proximate result of the negligence of the defendant, Freddie L. Johnson was severely injured in an automobile collision that occurred on December 13, 1975. Johnson suffered a severe spinal cord injury which has resulted in his becoming a quadraplegic, paralyzed from the level of the sixth cervical vertebra down. He has been rendered totally and permanently disabled. (Findings of Fact, August 1, 1980; agreed facts from pretrial order for the trial on the bifurcated issue of damages.)

2. Gaston Syrenne, M.D., one of Johnson's treating physicians was the only medical doctor to testify on behalf of either party. Dr. Syrenne is a neurosurgeon, Board Certified as a Diplomat of the American Board of Neurological Surgery. Dr. Syrenne testified that he examined Freddie Johnson on December 10, 1979, approximately four years after his injury. Dr. Syrenne testified that at the time of his

Tom L. Lewis, Regnier & Lewis, Ralph T. Randono, Randono & Donovan, Great Falls, Mont., for plaintiffs.

Robert T. O'Leary, U. S. Atty., District of Montana, Butte, Mont., for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

HATFIELD, District Judge.

This action was bifurcated for trial on the issues of liability and damages. The trial

December 10, 1979 examination Freddie Johnson was "Literally . . . paralyzed in the four limbs." Freddie Johnson had reached maximum healing two years after his injury and would remain paralyzed throughout the remainder of his life.

3. Freddie Johnson has bladder paralysis and must be provided with an external urinary collecting system. Johnson has no control over sphincter of the rectum and bladder, which requires manual or digital disinpaction of his bowels every other day. This is currently being provided by his wife, Clara Johnson.

4. Freddie Johnson suffers from frequent muscle spasms in his chest, stomach, and lower extremities.

5. Freddie Johnson, like all quadraplegics, has two major health problems, urinary or bladder infections and pressure sores with skin breakdown and ulceration.

6. Freddie Johnson also suffers from speech and breathing problems because of paralysis of his chest muscles. He breathes and speaks by use of his diaphragm only. He is more susceptible to lung disease than a normal person and requires special care for this condition.

7. Dr. Syrenne testified that he reviewed a report prepared by Fay Iennaco, R.N., which included a nursing evaluation for Freddie Johnson. Dr. Syrenne found the report to be quite thorough and agreed with the conclusions and recommendations contained in the report. Dr. Syrenne agreed that Freddie Johnson requires 24-hour nursing care, including a licensed practical nurse for eight hours per day and home health aide personnel for the remaining sixteen hours per day. Dr. Syrenne testified that it was unreasonable to expect Johnson's wife, Clara, to continue to provide 24-hour nursing care for the remainder of his life, because Johnson required professional medical care and constant attention including a requirement that he be turned over every two hours for the remainder of his life. Dr. Syrenne testified that in his opinion providing 24-hour nursing care in the Johnson home would be the best arrangement. Placing Freddie Johnson in an institution would have the deleterious effect of destroying the Johnson family. Less than 24-hour nursing care would not meet Freddie Johnson's reasonable medical needs.

8. Fay Iennaco, R.N., testified as to the nursing and health needs of Freddie Johnson. Mrs. Iennaco is a registered nurse certified in critical care nursing by the American Association of Critical Care Nurses. She is presently employed by A Visiting Redi-Nurse, Inc., of West Palm Beach, Florida as a home health aide supervisor and home health coordinator. She has been a licensed registered nurse since 1953 and has extensive experience in intensive care, critical care, and home health nursing. She is familiar with the availability of home health nursing in the geographical area in which plaintiff Freddie L. Johnson resides, namely Riviera Beach, Florida, and the area surrounding Palm Beach, Florida.

9. Mrs. Iennaco visited the home of Freddie Johnson and completed a total evaluation and assessment of his and his family's needs with respect to home health care nursing.

10. Mrs. Iennaco testified that Freddie Johnson is a quadraplegic 27 year old father of two young children. He, his wife and two children live in a well-maintained home. The home is extremely small with architectural barriers throughout the house, making it difficult for the free and safe use of a wheelchair. Johnson has minimal assistive devices for adequate daily living. He has no formal therapy program at the present time and no provisions are made for a vocational program.

11. From the date Freddie Johnson was discharged from the hospital and permitted to go home until the present time, total responsibility and care has been provided by Clara Johnson. Mrs. Johnson has transferred, positioned and provided health procedure daily throughout the 24-hour period with interrupted sleep nightly. She has been required to wake up every two hours to turn Freddie Johnson over, so that he does not experience skin breakdown and

pressure sores. She has accepted total responsibility for the care of the home, preparation of meals, care, discipline of the children and household finances.

12. It is apparent that Clara Johnson cannot continue her present routine for much longer without jeopardizing Freddie Johnson's health, her health, and the family structure and Johnson marriage.

13. Freddie Johnson needs total medical care provided by nurses, home health aides and physical therapists under close supervision by qualified physicians.

14. Freddie Johnson requires 24-hour nursing care, including a licensed practical nurse eight hours per day to care for his special needs (administration of medication, exercise, transport technique, digital removal of stool, insertion of suppositories, external catheter care, observation of adequate urine output, observation of possible urinary tract infection, proper diet and fluid regimen, assisting in possible emergencies that may arise, and lung assessments). Johnson also needs a home health aide (in addition to the LPN), to assist Johnson with personal care and allow Clara Johnson to care for her children, do personal shopping, grocery shopping, and other family needs.

15. The reasonable cost of the nursing services found by the court is $40,549.60. These figures were provided by Fay Iennaco, based upon a rate survey done by her employer, A Visiting Redi-Nurse, Inc., and based upon Mrs. Iennaco's experience. The court finds that 12 hours of attendance care per 24-hours is adequate to allow Clara Johnson relief.

16. Clara Johnson has inquired as to the cost of obtaining suitable housing with the necessary accommodations for a quadraplegic in the geographical area where the Johnsons presently reside, and testified that the cost of such a home would be $150,000.

17. The Johnson family is presently receiving Veteran's Administration benefits in the amount of $2,665.00 per month. Of this total $1,768.00 per month is paid to Freddie Johnson directly as a disability pension and $138.00 per month is paid to his wife and children. The remaining $759.00 per month is paid as an aide and attendant's allowance.

18. Both the plaintiff and the defendant called economists to testify during the trial on the bifurcated issue of damages. The plaintiff called Peter Formuzis, Ph.D., and the defendant called Mr. Harry Gaghen, who holds a master's degree in the field of economics. Both economists used a normal life expectancy in making their projections as to economic losses that have been occasioned by the injuries to Freddie Johnson. The defendant's economist testified that Freddie Johnson's life expectancy as of the date of his injury, had he not been injured in the subject accident, was 44.59 years, and his work life expectancy at that time was 38.79 years. The life expectancy testified to by the economists as of the date of trial was 40.9 years and the work life expectancy was 34.9 years.

19. Immediately prior to his injury Freddie Johnson planned to separate from the United States Air Force and enter butcher school in Toledo, Ohio. Had he separated from the service as planned, entered butcher school and entered that trade, he would have been reasonably expected to earn $56,024 as of the date of trial. The present cash value of the earnings he would have reasonably been expected to earn as a butcher throughout his normal life expectancy is an additional $932,255. Johnson's total economic loss, reduced to present worth due to his inability to work and earn in the open labor market, is $988,279. This figure has already been reduced by the amount Johnson would reasonably expect to pay the federal government for federal income taxes. The figure does not include fringe benefits, which total 15% of earnings. Fifteen percent of $988,279 is $148,242. The total economic loss, reduced to present worth and reduced due to the impact of federal income taxation, which has resulted from Johnson's inability to work as a butcher or in any other capacity, equals $1,136,521.

20. Freddie Johnson is unable to perform services around his home which the

average male head of the household would reasonably be expected to perform if physically capable of doing so. Such simple tasks as yard work, cleaning, repair work, and other home maintenance services are beyond his capabilities. The reasonable value of such home maintenance services over Johnson's life expectancy reduced to present worth is $179,518.

21. The reasonable value of the LPN and an aide for four hours a day is the sum of $40,549.60 per year for the remainder of Freddie Johnson's life expectancy, reduced to present worth, is $3,134,208.91. This is predicated upon a 1980 base expense of $40,549.60, commencing with services on January 1, 1981. This number should be reduced by 25% because it is the judgment of this court that, for the remainder of his life expectancy, Freddie Johnson will utilize, either in short or long term care, the facilities now available to him in Veteran's Administration hospitals. This finding is in recognition of the fact that Freddie Johnson is far more prone than the average person to contracting diseases and disabilities which require hospitalization. (*See, e. g.*, finding # 6, *supra*). Twenty-five percent of $3,134,208.91 is $783,552.22, leaving the sum of $2,350,656.69 as the reasonable award for nursing services and a home health aide for the remainder of Freddie Johnson's life expectancy, reduced to present worth.

22. I have used the plaintiff's economic expert to determine the above calculations. However, these must be reduced by the Veteran's Administration payments to date and to be paid in the future, and for these I use the defendant's economic expert.

23. The total economic loss and total cost of care and expenses of Freddie Johnson, reduced to present worth and considering the impact of federal income taxation as to wages, lost earnings, past and future, including fringe benefits, is the sum of $1,136,521.00; home maintenance services in the sum of $179,518.00; and LPN and aide care in the sum of $2,350,656.69; totaling $3,666,695.69 less the sum of $1,466,-368.00, which is the defendant's economic expert's estimate of Veteran's Administration benefits which have been paid and will be paid during Freddie Johnson's life expectancy.

24. Freddie Johnson has suffered great mental and physical pain and suffering as a direct and proximate result of the collision and his injuries.

25. Freddie L. Johnson has suffered the destruction of his capacity to pursue his established course of life as a direct and proximate result of the motor vehicle collision and his injuries.

## CONCLUSIONS OF LAW

1. The Federal Tort Claims Act holds the United States liable "in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 2674, on claims against the government for personal injury "caused by the negligent or wrongful act ... [of its employees] while acting within the scope of [their] ... employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred," 28 U.S.C. § 1346(b). Exclusive jurisdiction to hear these actions is conferred upon the federal district courts. There is no dispute that the tort in this case took place in Montana, thus, the applicable law is that of Montana.

2. Under Montana law, where it is determined that the defendant is liable for the plaintiff's injuries, the plaintiff is entitled to recover for lost earnings and loss of future earning capacity in an amount that will reasonably compensate the plaintiff for any loss of past and future earning power occasioned by the injuries in question. In fixing this amount, the finder of fact may consider what the plaintiff's health, physical ability, and earning power were before the accident, and what they are now. The finder of fact is required to consider the nature and extent of the injuries and whether or not they are reasonably certain to be permanent. All of these matters are considered in order to determine,

first, the effect, if any, the injury has had upon past and future earning capacity and, second, the present value of any loss so suffered. *Bourke v. Butte Electric & Power Co.*, 33 Mont. 267, 83 P. 470; *Montague v. Hanson*, 38 Mont. 376, 99 P. 1063; *Mullery v. Great Northern Railway Co.*, 50 Mont. 408, 148 P. 323; *Robinson v. F. W. Woolworth Co.*, 80 Mont. 431, 261 P. 253; *Bracy v. Great Northern Railway Co.*, 136 Mont. 65, 343 P.2d 848; *Gobel v. Rinio*, 122 Mont. 235, 200 P.2d 700; *McNair v. Berger*, 92 Mont. 441, 15 P.2d 834.

■ 3. Under Montana law, where it is determined that the defendant is liable for the plaintiff's injuries, the plaintiff is entitled to recover the reasonable value of necessary expenses to the plaintiff for any medical, surgical, hospital and other services and care and supplies, which the finder of fact determines to be reasonably certain to be required in the future in the treatment of the plaintiff, as the proximate result of the injury in question. *Cornell v. Great Northern Railway Co.*, 57 Mont. 177, 187 P. 902; *Gobel v. Rinio, supra; Chavez v. United States*, 192 F.Supp. 263, 272 (D.C. 1961).

■ 4. Under Montana law, the plaintiff is entitled to recover from a negligent defendant compensation for mental and physical pain and suffering. This does not require that any witness should have expressed an opinion as to the amount of damages that would compensate for such injuries. The law requires only that when making an award for pain and suffering, the finder of fact exercise calm and reasonable judgment. The amount must of necessity rest in the sound discretion of the finder of fact. *Bourke v. Butte Electric & Power Co., supra; McNair v. Berger*, 92 Mont. 411, 15 P.2d 834. In personal injury actions there is no measuring stick by which to determine the amount of damages to be awarded for pain and suffering other than the intelligence of a fair and impartial trier of fact governed by a sense of justice; each case must of necessity depend upon its own peculiar facts. *Pfau v. Stokke*, 110 Mont. 471, 103 P.2d 673. There is no standard

fixed by Montana law for measuring the value of human health or happiness. *Kelley v. John R. Daily Company*, 56 Mont. 63, 181 P. 326.

■ 5. Under Montana law a plaintiff who has been permanently injured as a result of the negligence of the defendant may recover such sum as will compensate him reasonably for the destruction of his capacity to pursue an established course of life as an element of damages distinct from plaintiff's loss of earning capacity. *Chavez v. United States, supra; Montague v. Hanson*, 38 Mont. 376, 99 P. 1063; *Wilson v. Northland Greyhound Lines*, 166 F.Supp. 667 (D.C.1958).

■ 6. Under Montana law the finder of fact must reduce future damages for loss of future earning capacity and future medical supplies, hospital expenses and medical expenses to the present cash value of such an amount and award the present cash value of such future damages. Present cash value is a present sum of money which, together with what that money may reasonably be expected to earn in the future for the period the plaintiff is determined to suffer such loss, when invested at a reasonable rate of return, will produce the dollar equivalent of such future damages. Future increases in wages and inflation may be properly considered by a finder of fact in arriving at a reasonable amount to be awarded the plaintiff for future economic losses where there is testimony of economists introduced, because such testimony removes considerable speculation and conjecture from the finder of fact's deliberations. *Resner v. Northern Pacific Railway Co.*, 161 Mont. 177, 505 P.2d 86; *Krohmer v. Dahl*, 145 Mont. 491, 402 P.2d 979; *Scruggs v. Chesapeake & Ohio Railway Company*, 320 F.Supp. 1248 (D.C.1970); *Magill v. Westinghouse Electric Corporation*, 327 F.Supp. 1097 (D.C.1971).

■ 7. Even though Freddie Johnson requires 24-hour home nursing care, I have found that 12 hours a day is a reasonable award, which is the sum of $40,549.60 per year in 1980 dollars.

8. Damages allowed Freddie Johnson against the defendant United States are to be diminished by 25%, the amount of negligence attributable to the plaintiff. § 27–1–702 M.C.A.

■ 9. The Veteran's Administration benefits paid to the plaintiff are not a collateral source, because such benefits are paid to the injured plaintiff "from unfunded general revenue." The defendant is therefore entitled to an offset equal to the amount of Veteran's Administration benefits already paid to the plaintiff and the present value of future Veteran's Administration benefits to be paid to the plaintiff, which is to be deducted from the award for lost earnings and loss of future earning capacity. *Brooks v. United States*, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949); *United States v. Brown*, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954); *United States v. [Harue] Hayashi*, 282 F.2d 599 (C.A.9, 1960).

■ Benefits paid for disability under the Social Security Act are paid from a special funded source. Social Security disability benefits and payments are made from special funds supplied in part by the beneficiary or one upon whom the beneficiary is dependent. Benefits paid from such a fund are, therefore, "collateral" to any FTCA recovery, and the government is entitled to no offset or deduction for any such payments received by the plaintiff. *Hayashi, supra; Smith v. United States*, 587 F.2d 1013 (C.A.3, 1978); *Cooper v. United States*, 313 F.Supp. 1207 (D.Neb.1970); *Gowdy v. United States*, 271 F.Supp. 733 (W.D.Mich.1967), *rev'd. on other grounds*, 412 F.2d 525 (C.A.6, 1969), *cert. den.*, 396 U.S. 960, 90 S.Ct. 437, 24 L.Ed.2d 425 (1969). *See also, United States v. Price*, 288 F.2d 448 (C.A.4, 1961); *United States v. Brooks*, 176 F.2d 482 (C.A.4, 1949). In *Hayashi* the Ninth Circuit Court states as follows:

Injury-related benefits paid from unfunded general revenue are to be deducted and *similar benefits paid from a special funded source are not.* . . . The objection to double compensation is that the same source is made to pay twice. *But if different sources are tapped, neither pays twice and this is true whether or not the benefits are contractual or vested.* (Emphasis supplied).

The Third Circuit has adopted the reasoning of the *Hayashi* case in *Smith v. United States, supra*:

We agree with the Ninth Circuit, where state law recognizes the "collateral source" doctrine, Social Security benefits should not be deducted from a recovery under the Federal Tort Claims Act. FTCA recoveries come out of general revenue; Social Security benefits are funded almost entirely from employee and employer contributions. *See*, 42 U.S.C. § 401(a) and the provisions of the Internal Revenue Code referred to therein. The government here did not argue that a FTCA recovery must be reduced by that portion of Social Security benefits attributable to the government's contribution out of general revenues. Nevertheless, we are constrained to note our disagreement with the Tenth Circuit in *Steckler, supra* [549 F.2d 1372 (10 Cir. 1977)], and decline therefore to adopt its approach. We believe that the government's payments are so minimal and so difficult to trace that such an approach would be impracticable. (footnote omitted).

587 F.2d at 1016.

10. At the close of the trial the plaintiff sought to amend his complaint to conform with the plaintiff's proof of the damages he suffered as a result of the defendant's negligence. Plaintiff's counsel moved to amend the prayer of plaintiff's complaint to $10,000,000 citing as authority Rule 15(b), F.R.Civ.P. Defendant resisted the motion on the grounds that the plaintiff's recovery is limited to $3,500,000 as set forth in plaintiff's administrative claim filed pursuant to 28 U.S.C. § 2675(b). Because of the findings of fact herein it isn't necessary to rule on the motion as the award is less than $3,500,000.00.

■ 11. The court concludes that plaintiff, Freddie L. Johnson, is entitled to recover damages against the defendant, United States of America, as follows:

| | |
|---|---|
| Loss of past and future earning capacity | $1,136,521.00 |
| Loss of home maintenance services | 179,518.00 |
| Cost of future LPN and aide care | 2,350,656.69 |
| Subtotal | $3,666,695.69 |
| Less Veteran's Administration benefits paid to date and to be paid | −1,466,368.00 |
| Subtotal | $2,200,327.69 |
| Past and future mental and physical pain and suffering | 50,000.00 |
| Destruction of capacity to pursue established course of life | 50,000.00 |
| Net damages suffered by Freddie L. Johnson | $2,300,327.69 |

This court has previously ruled that Freddie Johnson's award should be reduced by 25% for comparative negligence attributable to the plaintiff. Freddie L. Johnson is therefore entitled to recover from the United States 75% of $2,300,327.69, or the sum of $1,725,245.76.

From the foregoing findings of fact and conclusions of law, the Clerk is directed to enter judgment in favor of the plaintiff against the United States of America in the sum of $1,725,245.76.